CORRIGAN, J.
(dissenting). I join Justice MARKMAN’s dissenting opinion in all respects. I also join parts A and B of Justice Young’s dissenting opinion, including the discussion of respondent’s untruthful testimony and the conclusion that removal from office is the appropriate sanction for respondent’s lying under oath.
I write separately only to observe that respondent advances a far more compelling argument for a due process violation than I have seen in any prior Judicial Tenure Commission (JTC) case. The JTC executive director engaged in unnecessarily harsh tactics when he confronted respondent by surprise and attempted to obtain his resignation by 9:00 a.m. the next day. Although the executive director purported to speak for the JTC during his meeting with respondent, the record does not establish that the JTC approved all of the executive director’s tactics. Moreover, an impartial master appointed by this Court conducted a hearing and found the facts in this matter, the JTC’s decision is merely a recommendation to this Court, and the ultimate disciplinary decision is rendered by this Court after a de novo review. Thus, I conclude that respondent has not demonstrated an intolerably high risk of unfairness that is required to establish a due process violation.
In Withrow v Larkin, 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975), the United States Supreme Court held that the combination of investigative and adjudicative functions in a single entity does not necessarily violate due process:
*704 The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
The Supreme Court explained that it is “very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate the Administrate Procedure Act, and it does not violate due process of law.” Id. at 56. Although the combination of investigative and adjudicative functions does not by itself establish a due process violation, a court may nonetheless determine “from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high.” Id. at 58.
In In re Del Rio, 400 Mich 665; 256 NW2d 727 (1977), this Court followed Withrow in holding that the combination of investigative, adjudicative, and disciplinary roles of the JTC did not render it incapable of ensuring due process. This Court emphasized that the JTC’s role is limited to submitting its recommendations to this Court, and that this Court alone decides what, if any, disciplinary action should be taken.
This Court has made a conscious effort to segregate within the Commission the investigative and adjudicative functions. We specifically require under GCR 1963, 932.10, that an independent master be appointed by this Court to *705 preside over the adjudicative process once the Commission files a formal complaint. It is this master who also makes the findings of fact and conclusions of law upon which the Commission makes its recommendation and this Court ultimately bases its decision. Therefore, this Court, like the United States Supreme Court in Withrow, supra, 58, does not believe that the combination of the investigative and adjudicative roles in the Judicial Tenure Commission creates even a risk that due process guarantees could be violated. [Id. at 691.]
In In re Chrzanowski, 465 Mich 468, 486-487; 636 NW2d 758 (2001), we followed Withrow, Del Rio, and other Michigan authorities to hold that the JTC’s procedures afforded sufficient due process protections, and we found no special facts or circumstances to suggest an intolerably high risk of unfairness:
As to the procedures, first, pursuant to MCR 9.207(B)(3), the JTC conducted a preliminary investigation to determine whether respondent’s alleged conduct warranted further action. Second, after determining that sufficient evidence of misconduct existed, the JTC filed a formal complaint pursuant to MCR 9.208. Third, a master was appointed, notice was given, and a hearing was then afforded respondent under MCR 9.210(A) and MCR 9.211, with the JTC’s executive director serving as prosecutor-examiner under MCR 9.201(6).. .. Finally, the JTC’s conclusion that Judge Chrzanowski should be disciplined was ultimately just a recommendation to this Court that we are charged to review de novo pursuant to deciding what discipline, if any, is appropriate. As in Withrow, the JTC’s investigative and adjudicative procedures are functionally separate; additionally, as distinct from Withrow, in which the investigation and the decision were undertaken by the same Medical Examining Board, here the master, the examiner, and the JTC panel are separate entities. If the board in Withrow did not violate due process rights by investigating, and then adjudicating claims, it can hardly be argued that the JTC’s procedures violated due process. Further, a majority of the members of the JTC are judges, *706 and all the members who ultimately recommend discipline are assumed to be fair and impartial. We conclude then that there was no actual bias in the JTC’s decision. It had authority to review the master’s findings de novo, and reasonably determined, by a preponderance of the evidence, that respondent had in fact made false statements. We find these procedures adequately separated the JTC’s investigative and adjudicative functions.
On the basis of these authorities, I do not find a due process violation in this case. The JTC followed the very same procedures that we concluded in Del Rio and Chrzanowski were sufficient to ensure due process. That is, a master was appointed to find the facts that formed the basis for the JTC’s decision, the JTC’s decision was only a recommendation to this Court, and this Court bears the ultimate responsibility on its de novo review to decide what, if any, discipline is warranted.
Nonetheless, a close question is presented regarding whether special facts and circumstances created an intolerably high risk of unfairness. The JTC’s executive director confronted respondent without warning in his chambers, accompanied by an armed police escort who surreptitiously recorded the meeting. The executive director provided respondent with documents alleging misconduct and indicated that he would obtain respondent’s interim suspension if he did not resign by 9:00 a.m. the next day. The executive director also presented a resignation letter that had already been prepared on respondent’s own office stationery. The executive director represented that he was speaking on behalf of the JTC, stating:
The Commission is offering you this opportunity to resolve this matter as quickly as possible and not bring any shame, proceedings, accusations of peijury against you. You can resign immediately. And immediately means im *707 mediately. I have a letter right here you can sign. The Commission has said that I can give you until tomorrow morning. I prefer to take the letter with me right now.
When respondent stated that he would like to talk to someone “who knows this area much better that [sic] I do,” the executive director responded, “Yeah. So here’s a letter already prepared for you. If I have that letter faxed to me — my fax number is on that card that I just gave to you. If I have that letter faxed to my office by 9 a.m., and I mean by 9 a.m.”
Respondent stated that he could not make a decision by then, to which the executive director replied:
Then I’ll be filing the petition for interim suspension tomorrow and you will be suspended in a matter of days. And a formal complaint will issue with this. So, this will all ... . You’re up for election this year. So, this is all going to become public no later than March. You’ll be off the bench before then.
You have until tomorrow morning at 9. And I haven’t even touched — I haven’t even touched the sexual harassment — the little notes that you draw, the comments you make to the staff. I mean, we haven’t even gotten .... Oh yeah. We haven’t even gotten there.
You may think that because you were born in 19 whatever it was — forty something or other, that you’re from an old enough generation that can get away with saying certain things, but it’s just not true.
The executive director later repeated that “ [i]f the Commission has your letter of resignation by tomorrow by 9 a.m., this matter will be gone. Nobody will hear about it. You’ll have a retirement party. Everybody will *708 go home happy.” But, the executive director stated, if respondent fought the allegations, “I almost welcome the opportunity. Or you can take the easy way out and take a resignation.”
When respondent asked to see a file referred to in one of the alleged sexual drawings that the executive director provided, the executive director stated, “I’m not here now to do any type of interview with you. I’m not here to explain anything else.” When respondent asked what other evidence formed the basis for the allegations, the executive director stated:
Sir, I’ve followed the court rules. The rules are provided in 9.200 and following. We’ve complied with the court rules. I’ve come here to personally to [sic] give you this to perhaps avoid any embarrassing situations. I’ve come here to perhaps avoid having to drag your name through the mud with what is going to come out at a formal hearing and to give you an opportunity to obviate all that and retire quietly. I’m not here to discuss the matter with you.
The executive director later stated, “If we push this all the way, everybody’s going to know why you left because you got thrown off the bench.”
As the above excerpts reflect, the executive director’s tactics were unnecessarily harsh. The executive director essentially ambushed respondent in his chambers with the allegations, demanded his immediate resignation by 9:00 a.m. the next day, and refused to answer respondent’s questions regarding the bases for the allegations.
The record does not, however, reflect that the JTC itself approved all these tactics. Although the executive director represented that “the Commission” was giving respondent until 9:00 a.m. the next morning to resign, the record does not indicate whether the JTC approved the surprise nature of the confrontation, the refusal to *709 answer respondent’s questions, or the abrasive disregard of respondent’s request for more time to talk to someone.
I am extremely concerned about the grounds for the JTC’s decision to exclude from the record the audio recording of the executive director’s confrontation with respondent, because it gives rise to a possible inference of collaboration. Respondent submitted the recording as one of several attachments to his brief in support of his objections to the master’s report. The JTC granted the examiner’s motion to strike the attachments. The JTC chairperson explained the basis for that decision:
The presentation of additional evidence after the conclusion of a public hearing as [sic] governed by MCR 9.218. That rule provides that the Commission may order a hearing with at least 14 days’ notice. That process was not found [sic] in this case. Accordingly, the motion to strike was hereby granted.
The court rule cited by the chairperson, MCR 9.218, provides:
The commission may order a hearing before itself or the master for the taking of additional evidence at any time while the complaint is pending before it. The order must set the time and place of hearing and indicate the matters about which evidence is to be taken. A copy of the order must be sent to the respondent at least 14 days before the hearing.
Regardless of whether the striking of the audio recording was a correct decision under MCR 9.218, I have no real evidentiary basis to question the conclusion that the JTC decided the motion on the basis of its stated rationale rather than because of any effort to conceal the audio recording.
Therefore, I conclude that the executive director’s punitive tactics alone do not rise to the level of special *710 facts or circumstances that would create an intolerably high risk of unfairness. The record does not show that the JTC members exhibited any bias or prejudgment, and respondent has not overcome the presumption of honesty and integrity in those serving as adjudicators. Withrow, supra at 47. Moreover, an impartial master appointed by this Court conducted the hearing and found the relevant facts, the JTC’s decision was merely a recommendation to this Court, and it is this Court, after the de novo review, that now renders a decision regarding the appropriate discipline, if any, that should be imposed. Del Rio, supra; Chrzanowski, supra.
Accordingly, despite my serious concerns regarding the executive director’s behavior during his confrontation with respondent, I am not convinced that respondent has established a violation of his due process rights.